**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY J. DAVIS-LILLY, | ) | CASE NO. 1:13-CV-01983 |
| | ) | |
| Plaintiff, | ) | JUDGE ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff, Anthony J. Davis-Lilly ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

**I.  PROCEDURAL HISTORY**

On June 30, 2010, Plaintiff filed his applications for POD, DIB, and SSI, alleging a disability onset date of February 1, 2009.  (Transcript ("Tr.") 9.)  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an

administrative law judge ("ALJ"). (*Id.*) On March 28, 2012, an ALJ held Plaintiff's hearing. (*Id.*) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id.*) A vocational expert ("VE") also participated and testified. (*Id.*) On June 20, 2012, the ALJ found Plaintiff not disabled. (Tr. 6.) On August 5, 2013, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.) On September 9, 2013, Plaintiff filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 13, 14, 15.)

Plaintiff asserts the following assignment of error: The ALJ's decision was unsupported by substantial evidence because the ALJ failed to adequately describe all of Plaintiff's psychological limitations in his mental residual functional capacity.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in May 1965 and was 43-years-old on the alleged disability onset date. (Tr. 18.) He had at least a high school education and was able to communicate in English. (*Id.*) He had past relevant work as a mail handler and a driver/mail carrier. (*Id.*)

### B. Medical Evidence

Plaintiff indicates in his Brief on the Merits that he "does not agree with the ALJ's findings in regard to his physical impairments but does not dispute the support by substantial evidence to that portion of the ALJ's decision." (Plaintiff's Brief ("Pl.'s Br.") 3.) Accordingly, the Court will forego a lengthy recitation of Plaintiff's medical history

2

with regard to his physical impairments and will instead limit the discussion of the medical evidence to the relevant psychological evidence.

### 1. Medical Reports

In September 2006, Plaintiff was examined and underwent Minnesota Multiphasic Personality Inventory (MMPI-II)[1] testing by a psychologist at the Cleveland Veteran's Medical Center (VAMC). (Tr. 430.) The testing returned a severely elevated profile indicative of crying for help and a great deal of turmoil. (*Id.*) The psychologist noted that "[p]eople with such profiles are typically paranoid and may be diagnosed with Schizophrenia paranoid type or a paranoid personality disorder. They are likely to have a large set of unexplained somatic symptoms that may be delusional in nature." (Tr. 430-431.) Plaintiff was diagnosed with somatization disorder and delusional disorder persecutory type and was assessed a Global Assessment of Functioning (GAF) score of 45, indicating serious symptoms.[2] (Tr. 431.)

In August 2011, Plaintiff underwent another psychological evaluation at VAMC. (Tr. 804.) Plaintiff reported that he was currently on administrative leave from his job at the post office. (Tr. 805.) On mental status examination, he was tearful when talking about emotional struggles related to his job, he was cooperative but somewhat anxious, and he had paranoid thought processes. (*Id.*) Plaintiff had a long history of thoughts of

---

[1] MMPI-II is a standardized personality measure useful for evaluating several types of mental disorders for Social Security purposes.

[2] The GAF scale incorporates an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health illness devised by the American Psychiatric Association. A GAF score between 41 and 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning.

3

violence towards others and "has consistently expressed concern about these thoughts and has sought help in the past." (*Id.*) The evaluating psychologist, Cynthia Vankeuren, noted that Plaintiff drank three to five bottles of alcohol monthly. (*Id.*) Ms. Vankeuren concluded that Plaintiff had limited coping skills and was drinking alcohol excessively, as he did not see another way to manage his physical pain. (Tr. 806.) She agreed with the 2006 diagnoses of somatization disorder and delusional disorder. (*Id.*) She noted that Plaintiff seemed genuine in his efforts to want to improve his circumstances but noted that his fears may prove to be a challenge to his working collaboratively with providers. (*Id.*)

At a September 2011 appointment with Ms. Vankeuren, Plaintiff complained of frustration with his employer, who insisted that Plaintiff was on paid administrative leave even though Plaintiff was not actually being paid. (Tr. 801.) Plaintiff complained of increasing irritability but denied any intention of hurting others unless he needed to aggressively defend himself. (*Id.*) Mental status examination showed that Plaintiff was pleasant and cooperative, had a somewhat irritable affect, and exhibited paranoid thinking, "though there may be some merit to his concerns." (*Id.*)

On September 27, 2011, Nabila Rizk, a psychiatrist, evaluated Plaintiff for complaints of depression, anger, and anxiety. (Tr. 797.) Plaintiff reported that he tried to return to work in March 2011 but was not allowed in the building reportedly because documents were missing and his physical restrictions could not be accommodated. (Tr. 797-798.) Plaintiff reported that many people had wronged him and he would have liked to harm them but had no plan or intention to do so. (Tr. 798.) Dr. Rizk reported

4

that Plaintiff's main psychological issue appeared to be his anger and paranoia. (*Id.*) Dr. Rizk diagnosed rule out (r/o) somatization disorder, r/o delusional disorder, r/o substance abuse/dependence, and assigned a GAF score of 45, indicating serious symptoms. (*Id.*) Dr. Rizk prescribed Depakote to target Plaintiff's anger and irritability. (*Id.*)

On November 2, 2011, Adriana Faur, a psychologist, evaluated Plaintiff. (Tr. 776.) Plaintiff reported anxiety and depression. (Tr. 777.) He also reported using and possible dependence on cannabis and alcohol. (*Id.*) Plaintiff indicated that he had stressful child support legal issues and that he had been emotionally abused by his ex-girlfriend. (Tr. 776.) Ms. Faur diagnosed adjustment disorder with mixed anxiety and depression, r/o alcohol dependence, r/o cannabis dependence, and r/o post-traumatic stress disorder (PTSD), and assigned a GAF score of 58.[3] (*Id.*) Ms. Faur reported that Plaintiff's symptoms of anxiety and depression appeared to be related to recent stress and ordered individual psychotherapy to decrease his symptoms. (*Id.*)

On November 14, 2011, Plaintiff saw Dr. Rizk. (Tr. 768.) Plaintiff appeared irritable, angry, and frustrated. (*Id.*) He reported discontinuing Depakote after one week because it upset his stomach, made him jittery, and aggravated his angry temper. (*Id.*) Plaintiff reported that he had recently encountered a man who had stolen his car a few years earlier and, in self-defense, beat him up severely. (*Id.*) Plaintiff believed Depakote caused his reaction. (*Id.*) Plaintiff reported unsuccessfully trying

---

[3] A GAF score between 51 and 60 indicates moderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers).

5

antidepressants, including Paxil, which Plaintiff concluded were unhelpful and caused various side effects. (*Id.*) Plaintiff rejected Dr. Rizk's recommendation to try a trial of a tricyclic antidepressant to aid his sleep, pain issues, depression, and irritability. (Tr. 769.)

At a psychotherapy session with Ms. Faur on November 21, 2011, Plaintiff had a euthymic affect and reported an anxious mood, and Ms. Faur established the goal of decreasing Plaintiff's symptoms of depression and anxiety. (Tr. 767.)

In 2012, Plaintiff participated in group psychotherapy counseling in an effort to maintain sobriety. (Tr. 726-727.)

**2. Agency Reports**

**a. Dr. Pickholtz**

On February 24, 2011, Herschel Pickholtz, Ed.D., conducted a psychological evaluation of Plaintiff on behalf of the Social Security Administration's state agency, the Bureau of Disability Determination. (Tr. 617.) Plaintiff identified back problems, disc issues, and incontinence as the reasons he could not work. (Tr. 618.) He reported that he had received psychiatric treatment six months earlier for stress, but was not currently receiving such treatment and had never been hospitalized for psychiatric reasons. (*Id.*) He reported a history of drinking alcohol and using "street drugs" since the age of 18. (*Id.*) Plaintiff reported having no daily routine and would not describe one. (Tr. 621.) He reported not socializing much except at work, seeing his children monthly, attending his children's activities, vacuuming once weekly, cleaning laundry once monthly, watching television and playing video games once weekly, and never

6

cooking, sweeping, or shopping. (Tr. 622.)

Based on Plaintiff's performance during the mental status examination, Dr. Pickholtz estimated Plaintiff's intelligence to be extremely low but found a substantial discrepancy between his testing responses and his reported levels of intellectual functioning in his daily life. (Tr. 621.) Dr. Pickholtz concluded that the impact of Plaintiff's psychiatric complaints on the capacities to perform daily activities in an appropriate and timely fashion, interact with others, and care for the wants, needs, and demands of daily living fell within the moderate range. (Tr. 622.) Dr. Pickholtz noted that "[w]ith future psychiatric treatment, I believe the severity and degree of impairment would improve." (*Id.*) Dr. Pickholtz also concluded that, based upon his current presentation and behavior and the frequency and quality of daily social interactions inside and outside of the home involving relatives and children, Plaintiff's ability to relate to others was moderately impaired. (Tr. 622-623.) Dr. Pickholtz opined that Plaintiff's overall ability to understand, remember, and follow instructions was moderately impaired; his ability to maintain attention and perform simple repetitive tasks based upon pace and persistence during the evaluation was moderately impaired; and his overall ability to withstand the stresses and pressure associated with day-to-day work activities, from a psychological perspective, was moderately impaired. (Tr. 623.) Dr. Pickholtz diagnosed depressive disorder NOS, with a severity that was unspecified due to exaggeration; mild anxiety NOS; a cognitive disorder that was mild, unless there was corroboration of significant organic deterioration; and personality disorder NOS, related to passive/aggressive features and exaggeration. (Tr. *Id.*)

7

### b. Dr. Lewin

On March 6, 2011, Caroline Lewin, Ph.D., a state agency psychological consultant, reviewed Plaintiff's file and completed a mental residual functional capacity (RFC) assessment. (Tr. 93-95.)  Dr. Lewin opined that Plaintiff was markedly limited in his ability to carry out detailed instructions; moderately limited in his ability to maintain attention and concentration for extended periods; moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors; moderately limited in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and moderately limited in his ability to respond appropriately to changes in the work setting.  (Tr. 95.)  Dr. Lewin concluded that Plaintiff "should be able to cope with simple instructions in a routine setting not requiring much initiative.  He can concentrate most of the time and may function best without being around a lot of coworkers.  He may need supervisory prompts to persist at tasks." (*Id.*)

**C. Hearing Testimony**

**1. Plaintiff's Hearing Testimony**

Plaintiff was 46-years-old at the time of his administrative hearing.  (Tr. 35.)  He testified that he attempted to return to his job as a postal driver and mail handler on March 31, 2011, but was informed that he had to leave or risk being arrested.  (*Id.*)  He testified that he received a letter two months later indicating that no work was available

8

for him at the Postal Service. (Tr. 35-36.) Plaintiff testified that he suffered from multiple physical problems as well as depression, irritability, and paranoia. (Tr. 49.) He stated that a female friend performs his household chores and cooking, he did not visit friends or have visitors, and he had rocky relationships with his daughter and friend due to his bad mood swings. (Tr. 46-47.) Plaintiff testified that his medications caused short-term memory problems and confusion. (Tr. 48.)

### 2. Vocational Expert's Hearing Testimony

William Geiger, a vocational expert, testified at Plaintiff's hearing. The ALJ asked the VE to consider a hypothetical individual with Plaintiff's vocational profile who would be limited to the full range of light exertional work as defined in the regulations and would have the following limitations: frequent climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing; occasional stooping, kneeling, crouching, and crawling; frequent reaching in all directions with the left arm; must avoid moderate exposure to hazards such as operational control of moving machinery and unprotected heights; simple, routine, and repetitive tasks; superficial interaction with the public; and superficial interaction with coworkers with no tandem tasks. (Tr. 62-63.) The VE testified that the hypothetical individual would be capable of performing such jobs as a cleaner, inspector, and sorter. (Tr. 63.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered

disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§

404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since February 1, 2009, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease; left shoulder acromioclavicular hypertrophy with impingement, tendinosis, and muscle tear; cervical spine disc herniation and mild spondylosis; depressive disorder NOS; mild anxiety disorder NOS; mild cognitive disorder; and personality disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to frequent climbing of ramps and stairs; limited to no climbing of ladders, ropes, or scaffolds; limited to frequent balancing; limited to occasional stooping, kneeling, crouching, and crawling; limited to frequent left arm reaching in all directions; he must avoid even moderate exposure to hazards such as unprotected heights and operating dangerous machinery; limited to simple routine repetitive tasks; limited to superficial interaction with the public; and limited to superficial interaction with co-workers with no tandem tasks.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born in May 1965 and was 43-years-old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of

11

>
> disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Act, from February 1, 2009, through the date of this decision.

(Tr. 11-19.)

## LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a

preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignment of Error

Plaintiff argues that the ALJ's decision is unsupported by substantial evidence, because the ALJ failed to adequately account for all of Plaintiff's psychological limitations as assessed by consultative examiner Dr. Pickholtz. It is well established that an ALJ is not required to discuss each and every piece of evidence in the record for his decision to stand. *See, e.g., Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). However, where the opinion of a medical source contradicts his RFC finding, an ALJ must explain why he did not include its limitations in his determination of a claimant's RFC. *See, e.g., Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (Lioi, J.) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis."). Social Security Ruling 96-8p provides, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).

In March 2011, Dr. Pickholtz opined, in part, that Plaintiff's "overall abilities to maintain attention and to perform simple repetitive tasks based upon pace and

13

persistence during the evaluation fall within the moderate range of impairment." (Tr. 623.) In determining Plaintiff's RFC, the ALJ assigned "great weight" to Dr. Pickholtz's opinion, and ultimately concluded that Plaintiff was capable of performing simple, routine, repetitive tasks. (Tr. 13.) Plaintiff maintains that the ALJ's RFC finding does not adequately account for all of the psychological limitations assessed by Dr. Pickholtz, because the ALJ found that Plaintiff was capable of simple, routine, repetitive tasks, while Dr. Pickholtz opined that Plaintiff was moderately limited in that area.

The ALJ's RFC determination does not appear to be consistent with the conclusions Dr. Pickholtz rendered in his March 2011 opinion. Based on the wording of his report, it appears that Dr. Pickholtz assigned a moderate[4] limitation to the specific activity of performing simple, repetitive tasks. (Tr. 623.) This is not typical. More commonly, a consultative examiner will assign a limitation in a claimant's ability to perform work related activities, which the ALJ accommodates by limiting the Plaintiff to, *inter alia*, simple, routine, repetitive tasks. Because Dr. Pickholtz went a step further and assigned a moderate limitation to the ability to perform simple, repetitive tasks "based upon persistence and pace during the evaluation," his opinion is particularly confusing and unique in the way in which a consultative examiner considers a claimant's psychological limitations. (*Id.*) While Dr. Pickholtz's opinion may be unartful and atypical, as written, it states that Plaintiff is moderately limited in his ability to

---

[4] The regulations do not define the term "moderate" in this context. *See, e.g., Hendrickson v. Comm'r of Soc. Sec.*, No. 11-14047, 2012 WL 4006702, * (E.D. Mich. Aug. 16, 2012) ("[T]he term 'moderate' is not defined in the regulations or the Program Operations Manual System . . . .") (citing *Cantrell v. McMahon*, 227 F. App'x 321, 322 (5th Cir. 2007)).

14

perform simple repetitive tasks.  Thus, Plaintiff is correct in arguing that the ALJ's determination that Plaintiff is capable of performing simple, routine, repetitive tasks without further limitation directly conflicts with Dr. Pickholtz's opinion, and the ALJ has not addressed the inconsistency.  Accordingly, remand is appropriate.  Because Dr. Pickholtz's opinion is particularly unclear, the ALJ on remand should obtain clarification of the consultative examiner's opinion and either adopt those findings in his RFC or explain why the opinion is being discounted.

Additionally, the ALJ erred in his assessment of Plaintiff's ability to maintain concentration, persistence, or pace.  Dr. Pickholtz opined that Plaintiff is moderately limited in that area, and the ALJ specifically concluded in his decision that "[w]ith regard to concentration, persistence, or pace, the claimant has moderate difficulties."  (Tr. 13.)  Relying on *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010), Plaintiff argues that the ALJ's RFC does not adequately account for Plaintiff's limitations regarding his ability to maintain concentration, persistence, or pace.  In *Ealy*, the record showed that the claimant had a limited ability to maintain attention over time, even when performing simple, repetitive tasks.  *Ealy,* 594 F.3d at 516.  Specifically, a state agency psychological consultant limited the claimant's ability to sustain attention to complete simple repetitive tasks to "[two-hour] segments over an eight-hour day where speed was not critical." *Id.*  The ALJ, however, limited the claimant only to simple, repetitive tasks without any additional time-based limitations.  Accordingly, the Sixth Circuit found that the ALJ failed to adequately capture the claimant's limitations in concentration, persistence, and pace.[5]

---

[5] Defendant brings attention to the court's observation in *Jackson v. Comm'r of Soc. Sec.*, No. 1:10-cv-763, 2011 WL 4943966, at *4 (N.D.

15

*Id.*

  Here, the facts of Plaintiff's case support his contention that the ALJ erred in evaluating Plaintiff's ability to maintain concentration, persistence, or pace, because the ALJ failed to offer any explanation for not incorporating speed- and pace-based restrictions into Plaintiff's RFC. The ALJ purports to have believed that he accommodated Plaintiff's moderate impairment in maintaining concentration, persistence, or pace by limiting Plaintiff to simple, routine, repetitive tasks. Under the logic of *Ealy,* however, restricting Plaintiff to work that is simple, routine, and repetitive does not necessarily address all of Plaintiff's mental limitations, particularly those that are stress related. A claimant's inability to maintain pace, for example, may require the additional limitation of work that does not require quotas or strict production pressures. Here, in determining that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace, the ALJ noted only that Plaintiff "alleged difficulty with memory, short term recall, and confusion upon awakening when taking medications." (Tr. 13.) Thus, the ALJ did not adequately explain or address all of Plaintiff's mental impairments. Consequently, Plaintiff's argument that the ALJ's RFC does not adequately account for Plaintiff's mental limitations presents a basis for remand of his case. On remand, if the ALJ concludes that a limitation to simple,

---

Ohio Oct. 18, 2011) (Boyko, J.), that *Ealy* "does not require further limitations in addition to limiting a claimant to 'simple, repetitive tasks' for every individual found to have moderate difficulties in concentration, persistence, or pace," but rather "stands for a limited, fact-based ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions." In this case, however, the record does not demonstrate whether the ALJ's RFC determination adequately addresses Plaintiff's limitations with regard to concentration, persistence, or pace. Thus, even under the narrow reading of *Ealy* proposed by Defendant, remand is required.

16

routine, repetitive tasks adequately addresses Plaintiff's moderate difficulties with concentration, persistence, or pace, he should explain why he reached that conclusion based on the facts of Plaintiff's case.[6]

## VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: May 8, 2014

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[6] Plaintiff made the same or similar arguments addressed above with regard to the opinion of state agency consultant Dr. Lewin. In March 2011, Dr. Lewin opined that Plaintiff was moderately limited in his ability to maintain attention and concentration for extended periods, but then refined her opinion by concluding that Plaintiff "can concentrate most of the time." (Tr. 94-95.) Dr. Lewin also opined that Plaintiff "should be able to cope with simple instructions in a routine setting not requiring much initiative." Plaintiff suggests that Dr. Lewin's use of the word "should" means that she was only speculating with regard to Plaintiff's abilities. The Court, however, does not read Dr. Lewin's opinion that narrowly. Rather, Dr. Lewin's opinion appears to be consistent with the ALJ's RFC determination. Accordingly, the Court does not find that the ALJ erred in his treatment of Dr. Lewin's opinion, as the opinion is not in conflict with the ALJ's RFC, and the ALJ assigned it great weight. (Tr. 17.)

17